**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BOARD OF TRUSTEES of the PIPE FITTERS'** | ) | |
| **RETIREMENT FUND, LOCAL 597, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 13 C 7731** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **COMMERCIAL COOLING AND HEATING,** | ) | |
| **INC, an Indiana Corporation, and JEANNIE** | ) | |
| **ANDERSON, an Individual,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

"O, what a tangled web we weave,
when first we practice to deceive!"

Walter Scott, Marmion

**INTRODUCTION**

The present case inauspiciously began with a Complaint in October 2013, alleging that the

defendants breached a collective bargaining agreement and sought relief under ERISA and the

LMRA. [Dkt. #2]. An Answer was filed later that year [Dkt. #12], and the case was settled on

February 16, 2016. [Dkt. #70]. The parties then consented to jurisdiction here. [Dkt. #68]. At the

request of the parties, the case was dismissed without prejudice, with jurisdiction retained to enforce

the settlement agreement. [Dkt. #72].

On January 31, 2018, the plaintiffs moved to reinstate the case and to file a First Amended

Complaint, contending that the defendants had breached the settlement agreement. [Dkt. ##73, 75].

The parties then began negotiations on an updated audit, which was desired by the Plaintiffs. At a

scheduled hearing on July 23, 2018, defense counsel, Mr. Art Johnson, simply did not appear. Nor had the Defendants submitted the additional documents required for a complete audit. [Dkt. #81]. A First Amended Complaint was served on Defendants. [Dkt. #82]. The time to Answer or otherwise plead was August 16, and it came and went with no Answer by either Defendant – at least so far as the docket reflected. Fed. R. Civ. P. 15(a)(3) and 12(a)(1)(A)(I),  Also, no courtesy copy was provided to the court as required by Local Rule 5.2, and no notice of any filing in the case was provided by the court's automatic electronic docketing system either to this court or to any of the attorneys who were listed on the docket, and would have gotten notice had there been a filing.

Thus, on August 24, the Plaintiffs moved to default the Defendants and sought the entry of judgment against them jointly and severally in the aggregate amount of $2,538,383.21. [Dkt. #85]. And here is where the quite astonishing duplicity that is the subject of this Opinion begins.

On August 27, an obviously late Answer was filed with the Clerk's office by the Defendants' lawyer, Mr. Arthur Johnson. [Dkt. # 87]. No Motion was made for leave to file the out of time Answer, and it was filed without leave of court. Often, late, unauthorized filings like this will not be considered. *See Seaton v. Jabe*, 992 F.2d 79, 81 (6th Cir. 1993)(" We also agree with the district court that Seaton's late filing, without leave of court upon a showing of good cause, means that there was no viable removal petition before the federal court and, as a result, the state court was never divested of jurisdiction over the matter."); *Howard v. MMK Enterprises, LLC*, 2018 WL 1941679, at *1 (E.D. Cal. 2018)("Finding no justification for the delay, the court will not consider this late filing."); *Thomas v. Maryland*, 2017 WL 6547733, at *9 (D. Md. 2017)("Having received no request for leave of court to excuse the late filing, or an explanation for the late filing, the Court will strike Plaintiffs' Opposition.").

2

On the same day, the Defendants' page and a half Response To The Motion For Default was also filed. [Dkt. #88]. It was signed by Mr. Johnson and claimed that to the best of the Defendants' lawyer's knowledge at the time, the responsive pleading had been "properly filed," although it was claimed that no one from the defense lawyer's office clicked had on the link "to obtain a filed marked copy." [Dkt. # 88, ¶¶ 3-4]. No reason was given for this odd omission. The Defendants' Response said that it was only after receiving notice of the Plaintiffs' Default Motion that "counsel for Defendants clicked on the link and received an error message, indicating that the 'file cannot be found.'" [Dkt. # 88, ¶ 5]. The Response cited, but did not attempt to explain Exhibit 1, which was an email dated August 27 from Brittaney Stevenson, defense counsel's paralegal, to my courtroom deputy stating that on August 15 the Answer to the Amended Complaint was filed. Indeed, Ms. Stevenson included what purported to be a screenshot of a CM/ECF receipt, reflecting that the Answer was indeed filed on 8/15/19 at 4:30 p.m. The purported screenshot also was alleged to reflect that notice of the filing of the Answer was electronically mailed to nine people, whose names appeared on the docket. *See* Ex. 1 at 2. Later events would reveal that it was a manufactured document.

Her email claimed that when she recently clicked on the appropriate link an error message appeared stating "file cannot be found." Her email said that Ms. Stevenson was reaching out to the court "due to this error," and she concluded by saying that the Answer has just been "refiled," and she wanted to make the court aware of this *system* "error." There then followed an almost page-long notice she said she received apparently on the 26th – certainly not on the 15th – indicating from the CM/ECF system that notice of the filing was now being electronically mailed to the counsel shown on the attached list. [Dkt. #88, Ex. 1].

3

Paragraph 9 of the Response concluded by saying that to prevail under Rule 60(b), a defendant must show good cause for the default, quick remedial action and a "meritorious defense to the complaint." [Dkt. #88, ¶ 9]. The terse Response insisted that "Defendants acted quickly upon discovery of the filing *error* to remedy same prior to the entry of default." (Emphasis supplied).[1]

If the allegations in the Response were true, there would seem to have been good cause for the late filing and quick action to correct it. The difficulty, as shown by later events, was that the Response was false and manufactured. As we shall discuss, the behavior of defense counsel and his Firm set in motion a complicated – and ultimately needless and costly – exploration of the mechanics of the court's electronic filing system and demonstrated the astonishing lengths to which people will go to escape the consequences of their own behavior. Not only were the parties needlessly affected, but so too were the interests of other litigants. Unnecessary disputes "sap the time of judges, forcing parties with substantial disputes to wait in a longer queue and condemning them to receive less judicial attention when their cases finally are heard." *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077 (7th Cir. 1987). *See also Channell v. Citicorp Nat. Services, Inc.,* 89 F.3d 379, 386 (7th Cir. 1996). Each hour *needlessly* spent on a dispute is an hour squandered. *See Chicago Observer, Inc. v. City of Chicago,* 929 F.2d 325, 329 (7th Cir.1991) ("Litigation is costly not only for the litigants but also for parties in other cases waiting in the queue

---

[1] A " meritorious defense" was not reflected in the Response [Dkt. #88], nor was it pled in the untimely filed Answer, which merely consisted of a series of unexplained denials. Three so-called "Affirmative Defenses" were pled. The first merely stated that the Defendant reserves the right to assert additional "Affirmative Defenses" to the Complaint as they "become apparent and/or available during the course of discovery." The Second so-called Affirmative Defense merely stated that as to matters not specifically admitted, "the same is now hereby specifically denied by this legal paragraph of Answer." [Dkt. 87 at 10-11]. The last so-called "Affirmative Defense" merely asserted that the Complaint failed to state a claim upon which relief can be granted. Obviously, none of what was pled was an "Affirmative Defense." *Heller Finan., Inc. v. Midwhey Powder Co., Inc*., 883 F.2d 1286, 1294-95 (7th Cir. 1989).

for judicial attention.").[2]

But, none of this was certain in August, 2018, and thus, the Motion For Default was denied. [Dkt. #90]. Then on September 26, the Plaintiffs filed their Memorandum In Support Of The Motion for Sanctions that ominously said that counsel wished "to alert the Court that this matter is far from resolved." [Dkt. #92 at 9]. The Memorandum stated that Plaintiffs' counsel was professionally and ethically obligated to continue her inquiry into the claimed filing of the Answer, and it insisted that counsel for the Defendants "intentionally misrepresented information to this court" and Plaintiffs' counsel regarding the default judgment and the claimed filing of the Answer on August 15 – a filing which, it bears repeating, did not appear on the docket. [Dkt. #92 at 6]. The twelve-page Motion explained why the Plaintiffs believed the Defendants and their lawyer had acted unethically, and why counsel felt she was required to bring these concerns to the court's attention. The Memorandum concluded with a demand that Arthur Johnson pay attorneys' fees and costs arising from the August 27 response. [Dkt. #92 at 12].[3]

On October 2, I entered a detailed Order explaining the history of what my office had been told by the Defendants' counsel's office were the circumstances surrounding the claimed (unsuccessful) filing of the Answer on August 15. [Dkt. #93]. In light of the importance of the issue and the significance of the factual dispute between counsel, I ordered counsel to appear on October

---

[2] This is a problem to which that the Seventh Circuit has repeatedly adverted. *See, e.g., Otto v. Variable Annuity Life Insurance. Co.,* 134 F.3d 841, 854 (7th Cir.1998); *Channell v. Citicorp Nat. Services, Inc.,* 89 F.3d 379, 386 (7th Cir.1996); *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077 (7th Cir.1987).

[3] The Plaintiffs were represented by Nicollette L. Khuans of Johnson & Krol in Chicago. She was the author of the pre- and post-hearing briefs regarding the instant issue, and she conducted the hearing regarding the question of whether there had been an attempted filing by the Defendants on August 15th. The work done by Ms. Khuans deserves special mention.

4 to explain what had occurred in connection with the alleged filing of the Answer on the 15th and

the problems that allegedly had been encountered by defense counsel. [Dkt. #93]. On October 3, the

Plaintiffs filed an addendum to their Memorandum In Support Of Their Motion For Sanctions And

In Opposition To Defendants' Response To Plaintiffs' Motion For Default Judgment. [Dkt. #94].

> On October 9, I entered the following minute order:
>
> Although the defendant's lawyer claimed that the '"error message" was previously
> attached, It was not. The error message forwarded to me today by Ms. Stevenson is
> completely and materially different from the error message quoted in defendant's
> brief. [88-1]. In the brief, the "error message" was quoted as "file cannot be found."
> [88-1]. In contrast, the error message sent by email today states: "Security violation:
> You do not have access rights to this program (iqquerymenu.pl). Please contact the
> Systems Administrator if you feel this is in error..." The long and the short of all this
> is that a serious question has been raised as to whether there has been a significant
> misrepresentation to the court. Accordingly, I have asked Mr. Larry Chen of the
> court's Systems Department to be in attendance at the hearing on 10/25/18.

Thereafter, on October 25, I held a day-long evidentiary hearing regarding the parties'

conflicting positions. [Dkt. #101]. The plaintiffs called Mr. Chen of the Clerk's office, who testified

at some length regarding the operations of the CM ECF system and the impossibility of the story that

Ms. Stevenson (and perhaps Mr. Johnson) had invented to account for their behavior.

## I.

### FACTUAL BACKGROUND

On July 23, 2018, Plaintiffs filed their First Amended Complaint under §§ 502 and 515

of the Employee Retirement Income Security Act (29 U.S.C. §§ 1132 and 1145) and Section 301

of the Labor-Management Relations Act (29 U.S.C. § 185), seeking documentation necessary to

complete a payroll compliance audit for the period of May 1, 2014, through the (then) present.

Defendants failed to Answer or otherwise plead within the time specified by Fed. R. Civ. P.

12(a)(1)(A)(I). [Dkt. #82, 83]. Accordingly, on August 24, Plaintiffs filed their Motion For Default Judgment in the amount of $2,546,219.92. [Dkt. # 85].

On August 27, the Defendants belatedly – and without court approval – filed an Answer to the First Amended Complaint, as well as their Response to Plaintiffs' Motion for Default Judgment. [Dkt. ## 87, 88]. In their Response, Defendants contended that twelve days earlier on August 15, they had filed their "responsive pleading" to Plaintiffs' First Amended Complaint. (Response ¶ 3). In support of this claim, Defendants relied on Exhibit 1 to the Response, which Defendants described as "an email chain containing a screenshot evidencing the [timely] filing [on August 15th] of the responsive pleading." (Response ¶ 3; Exhibit 1). The Response was signed by Mr. Johnson.

Exhibit 1 to the Response was an email, chain containing two email exchanges: 1) an August 27, 2018 email from Brittaney Stevenson (the paralegal to Art Johnson) to Jan Smith, (my Courtroom Deputy); and 2) an August 27 email from Ms. Stevenson to Mr. Johnson, forwarding the previous email to his attention. The email to Ms. Smith came at 10:30 a.m., immediately *after* the actual filing of the Answer on the 27th. It claimed that:

> On August 15, 2018, our office filed the attached Answer to the Amended Complaint filed by plaintiffs. We received the below notice however upon clicking the link we received an error message which stated the "file cannot be found". Thus, I am reaching out to the court due to this error as we have just re-filed the attached Answer and wanted to make the court aware of the system error. Please feel free to contact me at your earliest, I can be reached at 219-769-0087.

[Dkt. # 88-1].

Attached to the email to Ms. Smith was what purported to be a docketing receipt, ostensibly proving that the defendants had attempted a filing on the 15th. The "receipt" stated:

> The following transaction was entered by Johnson, Arthur on 8/15/2018 at 4:30 PM CDT and filed on 8/15/2018

**Case Name:** Board of Trustees of the Pipe Fitters Retirement Fund, Local 597 et al
v. Commercial Cooling and Heating, Inc.
Case Number: 1:13-cv-07731
**Filer:** Jeannie Anderson Commercial Cooling and Heating, Inc.
WARNING: CASE CLOSED on 02/29/2016
Document Number:87
**Docket Text:**
**ANSWER to amended complaint by Jeannie Anderson, Commercial Cooling
and Heating, Inc. (Johnson, Arthur)**

[Dkt. #88-1](Boldface in original).

Based upon their counsels' review of Defendants' laconic Response and its accompanying

Exhibit, Plaintiffs and their lawyers believed that counsel for Defendants (and Ms. Stevenson) lied

to Ms. Smith (and to them and the court) in an effort to conceal the fact that the Answer to the First

Amended Complaint had not been timely filed or attempted to be filed on the 15th.

Ms. Stevenson claimed in her email that Mr. Johnson's law office had "received the [EMF]

notice that same day," where the referenced notice appeared to be a copied and pasted portion of an

CM/ECF email receipt dated August 15, 2018.  (Ex. 1 to Response).  The copied and pasted portion

of the CM/ECF email receipt appeared to be dated August 15, 2018 and purportedly identified that

the Defendants' Answer to Plaintiffs' First Amended Complaint was filed by Art Johnson at 4:30

p.m. *that day*.  (Ex. 1 to Response).  The copied and pasted portion of what purported to be a

CM/ECF email receipt dated August 15 further identified Defendants' alleged CM/ECF transaction

as "Document Number: 87" and also listed the seven attorneys of record for the Plaintiffs, who

purportedly received electronically mailed notice of the alleged August 15th transaction.  (Ex. 1 to

Response).  None had.

A review of the docket revealed that there were eighty-four docket entries as of August 15.

Thus, if Defendants' counsel (or his office) had really attempted to file the Answer on August 15 as

claimed, the Answer would have been assigned Document Number 85 by the computer system, not

number 87. But the copied and pasted portion of the alleged August 15 CM/ECF email receipt as

it was sent by Ms. Stevenson to Ms. Smith listed the transaction as Document Number 87, though

Plaintiffs' Motion for Default Judgment filed on August 24 [Dkt. # 85] and Notice of Motion also

filed on August 24 [Dkt. # 86] had already been filed. Even if there was some sort of CM/ECF

"system error" as was contended in the August 27 email to Ms. Smith, it would seem illogical, at

best, that the CM/ECF system would have "skipped" over two docket entries on August 15 –

Dockets Nos. 85 and 86 – and assigned Defendant's claimed Answer Docket No. 87, as defense

counsel was claiming.

Obviously concerned, counsel for Plaintiffs sent an email to Mr. Johnson and Ms. Stevenson

on August 27 outlining the apparent discrepancies surrounding the Response. The email requested

that defense counsel either: 1) withdraw the Response; or 2) send a copy of the alleged August 15

ECF email receipt to Plaintiffs' counsel in its native, unaltered format for their review. Significantly,

neither Mr. Johnson nor Ms. Stevenson responded to the email. That "silence [if not] deafening,"

*Muhammad v. Oliver*, 547 F.3d 874, 877 (7th Cir. 2008), was understandably a matter of concern

to the Plaintiffs and their counsel.[4]

Plaintiffs then filed their Reply in Opposition to Defendants' Response, discussing their

concerns and noting that what was apparently done by defense counsel gave rise to serious

professional and ethical violations. [Dkt. # 89]. On August 29, counsel for the parties appeared for

---

[4] This is not to say that the instant case turns on the lawyers' non-response. Nonetheless, that silence is inconsistent with the claim of good faith advanced by Mr. Johnson. In light of the controversy, he had an obligation to take steps to discover the truth. Blind acceptance of what he was being told (and there is no evidence of that) did not fulfill that obligation – especially when Ms. Stevenson's explanation of what had occurred was claimed to be fraudulent by the Plaintiffs.

the hearing on Plaintiffs' Motion For Default Judgment. [Dkt. # 90]. During the hearing, I requested that the Plaintiffs file a brief in support of their position on or before September 12, 2018. [Dkt. # 90]. Given the conflict in the stories, I denied Plaintiffs' Motion For Default. [Dkt. # 90].

I inquired as to whether Plaintiffs' counsel intended to proceed in her investigation of the "discrepancies" identified in Plaintiffs' Reply. [Dkt. # 90]. Counsel informed me they believed they were professionally and ethically obligated to continue the inquiry and that sanctions required. During this discussion, Mr. Johnson *now* claimed that the ECF filing information included in the August 27 email to Ms. Smith did not actually derive from an ECF email receipt, but instead was a "screenshot" or still image captured at the time that Defendants' counsel allegedly attempted to file the Answer to Plaintiffs' First Amended Complaint on August 15. Mr. Johnson indicated that he could send a copy of the screenshot to counsel [Dkt. # 90]. He further requested that he be allowed to respond to Plaintiffs' serious concerns and disturbing allegations.

After the hearing on Plaintiffs' Motion for Default Judgment, counsel for Plaintiffs emailed Ms. Smith on August 28 to request that she forward Ms. Stevenson's August 27 email to her. She did so the next day. A review of that email revealed, among a number of things, that the ECF information contained in Ms. Stevenson's August 27 email was not derived from a screenshot as Mr. Johnson represented to this Court on August 29; but was rather copied and pasted text that could easily be edited or altered by the sender in the body of an email.

On October 2, I ordered counsel to appear on October 4 to discuss the August 27 email sent from Ms. Stevenson to Ms. Smith. [Dkt. # 93]. *Yet, on October 4, neither the Defendants nor Mr. Johnson appeared for the hearing despite my Order and the obvious importance of the matter*! [Dkt. # 95]. Nor was any call or email received from Mr. Johnson attempting to explain his

nonappearance. Thus, I again ordered defense counsel and his client to appear at the status on

October 9. [Dkt. # 95].  On October 9, only Mr. Johnson appeared, despite the Order of the 4th that

Defendant's President also appear. [Dkt. # 96]. Mr. Johnson claimed quite unconvincingly that the

Defendant's President did not appear because he, Johnson, did not read the entire Order of October

4. [Dkt. # 96]. That was a contrived and disingenuous excuse. Moreover, the requirement that the

Defendant's President be in attendance appeared in line 13 of the Order. [Dkt. #96].

 I set the matter for hearing on October 25 and ordered Defendants' President, and Ms.

Stevenson, the paralegal whose conduct was in question, to appear at the next hearing. [Dkt. # 96].

In addition, the Order of October 9 stated that additional information had been provided to the court

and the parties that called into substantial question 1) the representation that there had been an

unsuccessful attempt to file the Answer on August 15; and 2) the very existence of the claimed error

message on which the defense was relying.  In short, the Plaintiffs' claim of a fraud on the court

could not have been more significant to the case and its outcome or to the due administration of

justice. No claim was made by Mr. Johnson that an IT vendor had been consulted and that he

thought that Ms. Stevenson's story was true and that in light of that opinion  that he, Johnson,

believed it to be true.  Failure  to mention a material circumstance where it would have been natural

to mention it has the effect of diminishing a witness' credibility. *Nelson-McGourty v. L & P Fin.*

*Adjusters Inc.*, 2010 WL 3190711, at *6 (N.D. Ill. 2010). Silence like obliquity can be eloquent. *See*

*United States v. Curescu*, 674 F.3d 735, 740 (7th Cir. 2012). *See* the authorities discussed in detail

in *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 314 F. Supp. 3d 931, 936 (N.D. Ill. 2018).

On October 11, I ordered Mr. Johnson and Ms. Stevenson to forward the original files of the

alleged screenshot images to Plaintiffs' counsel and the Court for inclusion in the record. [Docket

No. 98]; (Hearing Transcript, p. 2, ¶¶21-25, p. 3, ¶¶1-25). *Incredibly, neither Mr. Johnson nor Ms. Stevenson produced the alleged screen shots as they were ordered to do!*

On October 25, an evidentiary hearing was held on the issue of whether Mr. Johnson, J&ILLP and the Defendants attempted to perpetrate a fraud on the court and the Plaintiffs. During the hearing, both sides were given the unlimited opportunity to introduce evidence and call witnesses to support their respective positions. Astonishingly, while Mr. Johnson called no witnesses and introduced no evidence, he attempted to have admitted (or considered) an unsigned, undated, unauthenticated, unsworn, unaddressed, typed statement from what he claimed was an IT vendor that he said explained why  he believed Ms. Stevenson's story that she  had attempted to file Defendants' Answer to the First Amended Complaint on August 15.  *See* Dkts. ## 118, 119. (Hearing Tr., p. 7, ¶¶4-25, pp. 8-12, p. 27, ¶¶18-25, p. 28, ¶¶1-11, p. 194, ¶¶22-25, p. 195, ¶¶1-17). Mr. Johnson never attempted to call the unnamed author of the document as a witness. Nor did he ask for permission to testify about his mental state at the time or the effect the "letter" may have had on his assessment of the controversy. I did not admit the document. While the Rules of Evidence are malleable, they are not that malleable. *See* discussion *infra* at 29-32.

The Order scheduling the hearing requested that Larry Chen, one of three CM/ECF Systems Administrators for the United States District Court for the Northern District of Illinois, be present to testify about the workings of the CM/ECF system and the claims by Mr. Johnson and Ms. Stevenson regarding the system's operations. Prior to the hearing, Mr. Chen prepared a fourteen page report ("Hearing Exhibit B") attached to the Plaintiff's Post-Hearing Brief as Exhibit 3) detailing his analysis of Mr. Johnson and Ms. Stevenson's claim that they filed Defendants' Answer to Plaintiffs' First Amended Complaint on August 15.  (Hearing Tr., p. 28, ¶¶15-25, p. 29, ¶¶1-7).

12

Specifically, the report detailed seven major inconsistencies discovered by Mr. Chen that supported the Plaintiffs' claim that Ms. Stevenson (and/or Mr. Johnson) purposefully altered the original CM/ECF entry discussed in the email sent by Stevenson to Ms. Smith on August 27. During the hearing, Mr. Chen testified at length regarding his findings and opinions. That testimony is the underpinning for the Plaintiff's contention that Mr. Johnson and Ms. Stevenson attempted perpetrate a blatant fraud on the court.

## II.

## ARGUMENT

Based on the evidence presented at the hearing, there is no doubt that a fraud was attempted to be perpetrated on the Plaintiffs and the court, and that it was to be accomplished by falsely claiming that the Defendants had attempted to file an Answer on August 15 but that some glitch in the CM/ECF system thwarted the effort. The Plaintiffs have asked me to sanction Mr. Johnson and his Firm, J&ILLP, and the Defendants by ordering them jointly to pay the Plaintiffs' fees and costs in bringing the fraud to light. They have also sought entry of judgment in their favor and against the Defendants, jointly and severally, in the amount of $2,546,219.92 (an amount equivalent to the damages sought by the Plaintiffs in their Motion for Default). [Dkt. #85].

## A.

### THE EVIDENCE PRESENTED AT THE HEARING
### CONCLUSIVELY ESTABLISHED THAT A FRAUD WAS ATTEMPTED
### TO BE PERPETRATED ON THE COURT AND THE PLAINTIFFS

In his testimony, Mr. Chen explained in detail what actually had occurred in connection with the claimed filing of the Answer on the 15th. As discussed in detail below, the palpable inconsistencies in Ms. Stevenson's utterly implausible, sworn testimony demonstrated her lack of

credibility and her attempt to deceive the court and the Plaintiffs as to when the Answer was filed. The testimony overwhelmingly demonstrated that: (I) Johnson/Stevenson did not file or attempt to file the Answer on August 15, 2018; (ii) Johnson/Stevenson lied in the email to Ms. Smith and in the Defendants' Response To The Motion For Default Judgment, and (iii) the email to Ms. Smith was fraudulently manipulated. *See also* the exhibit to the Defendants' Response to the Motion For Default Judgment.

**1.**
**If Defendants' Answer To Plaintiffs' First Amended Complaint Had Been Filed On August 15, 2018 It Would Not Have Been Given Document Number 87**

According to Mr. Chen, the most critical element he observed in his review was the fact that the document number in the alleged CM/ECF entry included in the body of Ms. Stevenson's email to Ms. Smith is Document Number 87 and not Document Number 85. (Hearing Tr., p. 31, ¶¶8-25, p. 32, ¶¶1-7). The CM/ECF information included in Ms. Stevenson's email provided that the Defendants' Answer to Plaintiffs' First Amended Complaint was filed on August 15, 2018, and was supposedly given Document Number 87 by the CM/ECF system. (Hearing Tr., pp. 29-30, p. 31, ¶¶1-25, p. 32, ¶¶1-7); (Hearing Exhibit B, p. 1; Exhibit 3). However, Mr. Chen testified that it would be *impossible under any circumstance* for the CM/ECF system to attribute Document Number 87 to the Defendants' Answer to Plaintiffs' First Amended Complaint if that document had truly been filed on August 15, as Ms. Stevenson and Mr. Johnson insisted. (Hearing Tr., p. 32, ¶¶3-25, p. 33, ¶¶1-25, p. 116, ¶¶11-17).

Mr. Chen testified that CM/ECF automatically assigns document numbers to filed documents "based on the date of filing." (Hearing Tr., p. 32, ¶¶4-20). The docket reflects that Document Number 85 was automatically attributed to Plaintiffs' Motion For Default Judgment filed

on August 24, 2018; and Document Number 86 was automatically given to Plaintiffs' Notice of Motion for the Motion for Default Judgment on August 24, 2018. (Hearing Exhibit B, p. 4; Exhibit 3). Defendants claim that the CM/ECF system must have skipped multiple numbers on August 15 in order to assign Document Number 87 to the Defendants' Answer to Plaintiffs' First Amended Complaint. However, as Mr. Chen testified, this was impossible. (Hearing Tr., p. 116, ¶¶11-17). As Mr. Chen stated: "you [are] never going to get 87 based on a date that was filed if it was filed on August 15th." (Hearing Tr., p. 51, ¶¶ 22-25, p. 52, ¶¶ 1-6).

Not only did Mr. Chen testify that it was *impossible* for the CM/ECF system to generate a document number of 87 prior to generating document numbers 85 and 86, the CM/ECF system makes it impossible to reuse the same document number at all. (Hearing Tr., p. 33, ¶¶3 - 10). Therefore, if Document Number 85 was assigned to the Defendants' Answer to Plaintiffs' First Amended Complaint – as Defendants claimed – it could have never been used again for Plaintiffs' Motion For Default Judgment (Hearing Tr., p. 33, ¶¶3-10) – as it was. However, Plaintiffs' Motion for Default Judgment was assigned Document Number 85, meaning that Document Number 85 was not attributed to any filing until August 24, 2018 (nine days after Defendants' allege they filed). Mr. Chen concluded that "there is a high probability that the date has been altered" in the August 27, 2018 email that was sent from Stevenson to Ms. Smith. (Hearing Tr., p. 53, ¶¶11-14).

Critically, Defendants failed to offer any evidence during the hearing that contradicted Mr. Chen's findings. All that there was was Ms. Stevenson's insistence that her story was true – a story I do not credit and which did not call Mr. Chen's findings into any reasonable question. The evidence showed Ms. Stevenson's story about the attempted filing on the 15th was impossible, and no court is bound to accept "inherently incredible" evidence. *See e.g.*, *Anderson v. Bessemer City*, 470 U.S.

564, 575 (1985); *Whitehead v. Bond*, 680 F.3d 919 (7th Cir. 2012); *Matter of Garman*, 643 F.2d 1252, 1254 (7th Cir. 1980)("Our examination of his testimony leaves us with the firm conviction that not only was Garman an evasive witness, but that his testimony was inherently incredible.");*Geighy Chemical Corp. v. Allen*, 224 F.2d 110, 114, n.5 (5th Cir. 1955). *See also Quock Ting v. United States*, 140 U.S. 417-420 (1891). The evidence provided by Mr. Chen, combined with the contrived story of the Defendants, demonstrated that there was a conscious attempt to defraud the court and the Plaintiffs.

**2.**

**The CM/ECF Information in the August 27, 2018 Email Is Not A Screenshot**

The Defendants also claimed that the CM/ECF entry contained in the body of the August 27, 2018 email is a screenshot that was taken by Ms. Stevenson, in accordance with J&ILLP's general filing practice. (Hearing Tr., p. 153, ¶¶3-25, p. 154, ¶¶1-19). Not only did Mr. Johnson introduce no evidence of the Firm's allegedly general filing procedure, Mr. Chen's analysis proved that the claim of timely filing was false. (Hearing Tr., p. 30, ¶¶8-25, p. 31, ¶¶1-4) ("And when you reviewed it, this information....the email did not contain a screenshot in the body of the email, is that correct? No, it did not contain [a] screenshot...[b]ecause when I mouse over this, I can see where it is going to.....[s]o this is something that's clickable, which is not a screenshot."). Mr. Chen testified that there would not be an active hyper-link in the CM/ECF information provided by Stevenson if the information were actually contained in a screenshot. (Hearing Tr., p. 30, ¶¶8-25, p. 31, ¶¶1-4). However, here, when one scrolls over the Document Number 87, an active hyper-link appears. (Hearing Tr., p. 30, ¶¶8-25, p. 31, ¶¶1-4). Therefore, Mr. Chen concluded that the CM/ECF information in the body of the August 27, 2018 email is, in fact, not a screenshot, but rather text

which was copied and pasted into the body of the email. (Hearing Tr., p. 30, ¶¶8-25, p. 31, ¶¶1-4). Mr. Chen also testified that when one clicks that link in the August 27 email, it redirects the user to the actual filed Document Number 87, which was docketed on August 27, not August 15. (Hearing Tr.,p. 34, ¶¶12-20).

These facts are critical for obvious reasons. First, the fact that the CM/ECF information was not a screenshot, but was copied and pasted demonstrates that Ms. Stevenson lied to the court about the contents of the August 27, 2018 email. Second, by copying and pasting the CM/ECF information into the body of the August 27 email instead of providing a screenshot, Ms. Stevenson had the ability to alter the CM/ECF information. Third, the Defendants' story about the alleged August 15th filing is belied by the fact that clicking the Document Number 87 hyperlink would take one to Document Number 87, which was docketed on August 27 and not August 15. The Defendants failed to offer any evidence and thus, there was none that even remotely contradicted Mr. Chen's findings. There was only Ms. Stevenson's insistence that she had, in fact, attempted to file the Answer on August 15th. At no point in the hearing did Mr. Johnson concede what was obvious to everyone in the courtroom.

**3.**

**The Unique Docket Entry Sequence Number of Defendants' Answer to Plaintiffs' First Amended Complaint Should Not Be Higher Than The Unique Docket Entry Sequence Number Of Document Numbers 85 and 86**

Mr. Chen's technical analysis provided that the Defendants' Answer to the Plaintiffs' First Amended Complaint was filed on August 27, and not August 15. The hyper-link that was attributed to Document Number 87 included in the August 27, 2018 email contains a "unique docket entry sequence number." (Hearing Tr., p. 35, ¶¶11-25, p. 36, ¶¶1-6, p. 37, ¶¶1-20, p.58, ¶¶18-25, p. 59,

¶¶1-25, p. 60). As exemplified by Page 1 of Hearing Exhibit B, the unique docket entry sequence number attributed to Document Number 87 was 327. (Hearing Exhibit B, p. 1;Exhibit 3). Mr. Chen testified that any successive CM/ECF filing will contain a higher unique docket entry sequence number than the one attributed to earlier CM/ECF filings. (Hearing Tr., p. 60, ¶¶17-25, p. 61, ¶¶1-25, p. 62, ¶¶1-12). As a result, if Defendants' Answer to Plaintiffs' First Amended Complaint had been filed before August 24, (Documents Numbers 85 and 86), the unique docket entry sequence number for the Answer to the First Amended Complaint would be lower than the unique docket entry sequence number attributed to Plaintiffs' Motion for Default Judgment and Notice of Motion.

However, Document Number 84 was given unique docket entry sequence number 318; Document Number 85 was attributed unique docket entry sequence number 322; and Document Number 86 was given unique docket entry sequence number 324. (Hearing Exhibit B, pp. 8-9;Exhibit 3). Therefore, it was impossible for Defendants' Answer to Plaintiffs' First Amended Complaint which was given Document Number 87 and unique docket entry sequence number 327 to have been filed before Document Numbers 84, 85, and 86, because the unique docket entry sequence numbers only go in ascending order. As Mr. Chen testified:

> Q: [J]ust so we can be clear, are you saying that what has been described as the filing sequence and the number assignment by the defendant could not have occurred as they claim?
>
> A: If this one was actually from August 15 this could not be possible. The Sequence Number 327 is not possible.

(Hearing Tr., p. 37, ¶¶6-12).

The only possible and reasonable conclusion that one can draw from Hearing Exhibit B and

Mr. Chen's testimony is that a fraud was attempted to be perpetrated on the court and the Plaintiffs. Mr. Johnson's "ostrich-like" behavior and his continued, unconditional sponsorship of Ms. Stevenson's story amounts to willful blindness, which is sufficient to show the necessary intent. *Cf.*, *Microsoft Corp. v. Rechanik,* 249 Fed.Appx. 476, 478-479 (7th Cir. 2007). "'[T]o know, and to want not to know because one suspects, may be, if not the same state of mind, the same degree of fault.'" *United States v. Giovannetti,* 919 F.2d 1223, 1228 (7th Cir. 1990).

This is essentially the argument made in the Plaintiffs' Reply brief. [Dkt. #117]. The Plaintiffs note that Mr. Johnson continuously represented to this court and opposing counsel that his paralegal's version of events was true. Yet, he undertook no investigation to determine whether what his paralegal was saying was accurate. It is the Plaintiffs' position that Mr. Johnson's "failure to investigate and then continued representations to the Court and opposing counsel that Ms. Stevenson's version of events was true is akin to Art Johnson committing the fraud himself." [Dkt. #117 at 2].

**4.**

**The Defendants' Answer Was Not Filed On August 15, 2018
Nor Was an Attempt Made to File the Answer On That Date
Notwithstanding the Insistence of Ms. Stevenson That She Did So**

Significantly, Mr. Chen also testified that there was not a single e-filing attempt made by Mr. Johnson's CM/ECF e-filing account on August 15. As highlighted by Page 2 of Hearing Exhibit B, Mr. Chen ran a System Transactions Log report for Mr. Johnson's CM/ECF filing account. (Page 2 Hearing Exhibit B, Exhibit 3). A System Transactions Log "keep[s] track of all of the changes –that were made to the [CM/ECF] system." (Hearing Tr., p. 40, ¶¶1-13); (Hearing Exhibit B, p. 2; Exhibit 3). Specifically, it will show whether an attorney or CM/ECF user filed a

19

document, named a document, changed the email address or office address affiliated with their account, and more. (Hearing Tr., p. 40, ¶¶1-13). As shown by Page 2 of Hearing Exhibit B, Mr. Johnson's Systems Transaction Log shows that only 5 transactions were attributable to Mr. Johnson's CM/ECF account for the period of August 10 through August 27.

The System Transactions Log reveals that none of those transactions occurred on August 15. (Hearing Exhibit B, p. 2; Exhibit 3); (Hearing Tr., p. 42, ¶¶1-25, p. 43, ¶¶1-6, p. 44, ¶¶23-25, p. 45, ¶¶1-9). If Mr. Johnson and/or Ms. Stevenson actually attempted to file the Answer on August 15 and received an error message, there would have been an attempt to file logged on the System Transactions Log. (Hearing Tr., p. 45,¶¶ 5-9). During the hearing, the Defendants failed to present any evidence which demonstrated the contrary. If Mr. Johnson or Ms. Stevenson had even attempted to file any document on August 15, it would have been reflected on the System Transactions Log. The only reasonable conclusion is that Ms. Stevenson lied under oath about the timing of the actual attempt to file the Defendants' Answer to Plaintiffs' First Amended Complaint.

## 5.

### There Was No Notice Of Electronic Filings Sent Out In This Case On August 15

Mr. Chen also provided incontrovertible evidence that there were no Notice of Electronic Filing emails sent out on August 15. He said that every time a user files anything on CM/ECF, a Notice of Electronic Filing email is automatically generated through the CM/ECF filing system and sent out to all attorneys who have filed an appearance in the case, as well as to the assigned Judge. (Hearing Tr., p. 45, ¶¶11-25, p. 46, ¶¶1-5). According to Mr. Chen, a Notice of Electronic Filing email is supposed to be sent out within thirty minutes to an hour of filing. (Hearing Tr., p. 46, ¶¶7-20). Mr. Chen testified that a Notice of Electronic Filing email will "always get through" even

20

if it is delayed. (Hearing Tr., p. 50, ¶¶11-15).

In order to verify that there were no Notice of Electronic Filing emails sent out on August 15 Mr. Chen used a program called CENTS E-Mail Tracking, which could only be run by internal employees who work for CM/ECF. Per Mr. Chen's testimony, the CENTS program is "a program that [CM/ECF administrators] use to run [a] query on the mail server." (Hearing Tr., p. 48, ¶¶4-10). Mr. Chen ran a CENTS query for the period of August 9, 2018 through August 23, 2018 for the case number in this case. (Hearing Exhibit B, p. 3; Exhibit 3). The CENTS Search Results revealed there were no Notice of Electronic Filing emails generated between the period of August 9, 2018 and August 23, 2018, including on August 15, 2018. Mr. Chen said this indicated that "nothing [was] filed on August 15th." (Hearing Exhibit B, p. 3; Exhibit 3); (Hearing Tr., p. 48, ¶¶5 -25).

Additionally, Mr. Chen explained that the Court has its own internal method to see if a Notice of Electronic Filing email was generated. Each docket entry has a "silver ball" next to it. (Hearing Tr., p. 53, ¶¶15-25, p. 54, ¶¶1-2); (Hearing Exhibit B, p. 5;Exhibit 3). When the Court and its internal staff click the "silver ball," they are able to view the actual Notice of Electronic Filing generated when a document has been filed. (Hearing Tr., p. 53, ¶¶15-25, p. 54, ¶¶1-2, p. 55, ¶¶6-12); (Hearing Exhibit B, p. 5; Exhibit 3). Mr. Chen further testified that when he did click on the "silver ball" next to Defendants Answer to the Plaintiffs' First Amended Complaint (Docket No. 87), it generated the Notice of Electronic Filing, which appears on Page 5 of Hearing Exhibit B. (Hearing Exhibit B, p. 5; Exhibit 3). A review of the Notice of Electronic Filing generated by Defendants' Answer to Plaintiffs' First Amended Complaint reveals that the filing date was August 27 at 10:20 a.m., not August 15. (Hearing Exhibit B, p.6; Exhibit 3). According to Mr. Chen, it is impossible to alter this information. (Hearing Tr., p. 57, ¶¶9-23).

Finally, when Mr. Chen "moused over" the Document Number 87 in the "Court Internal User's View," the unique docket entry sequence number was 327, which is the same as the unique docket entry sequence number that appears when Mr. Chen "moused over" the Document Number 87 in Stevenson's August 27 email to Ms. Smith. (Hearing Tr., 62, ¶¶1-25, p. 63, ¶¶1-9). Therefore, Mr. Chen concluded that Document 87 was filed on August 27 – not August 15 – and that the email sent by Stevenson to Ms. Smith contained CM/ECF information that "*looks like a date has been altered.*" (Hearing Tr., p. 58, ¶¶ 12-21)(Emphasis supplied). The Defendants failed to offer any testimony or other evidence demonstrating that a Notice of Electronic Filing email was in fact generated on August 15 in connection with this case.

The fact that no Notice of Electronic Filing email was generated on August 15 demonstrates that neither Mr. Johnson nor Ms. Stevenson filed anything on the 15th. Mr. Chen's testimony reveals that there is only one explanation for why Stevenson's August 27 email contains the date August 15 — it is because Ms. Stevenson intentionally altered the date in the email. The Defendants did not attempt to file an Answer on the date as Mr. Johnson and Ms. Stevenson fraudulently claimed.

**6.**

**The Font Appearing In The Alleged Notice of Electronic Filing Information That Ms. Stevenson Included in Her Email To Ms. Smith Was Different Than The Font Always Used by the CM/ECF System In A Notice Of Electronic Filing**

Mr. Chen testified that the font used in the Notice of Electronic Filing that was included in Ms. Stevenson's August 27th email to Ms. Smith was different than the standard font *always* used in a Notice of Electronic Filing generated by CM/ECF. (Hearing Tr., p. 66, ¶¶10 -20). Thus, the Notice of Electronic Filing Ms. Stevenson sent to my courtroom deputy was fraudulent and

22

manufactured for the occasion. Mr. Chen stated that the main purpose of Page 10 of Hearing Exhibit B is:

> [T]o show there is some differences between what has been provided [and] what the actual NEF would look like. It seems like this paragraph has been formatted so that the font si[z]e is different, the font is different. Also it added the extra coding behind it.

> (Hearing Exhibit B, p. 10; Exhibit 3); (Hearing Tr., p. 82, ¶¶7-19).

The fact that the font is different on the Notice of Electronic Filing information included in Ms. Stevenson's August 27 email to Ms. Smith from the font that would be included in a CM/ECF automatically generated Notice of Electronic Filing is further compelling, if not irrefutable, evidence that the date of August 27, in Ms. Stevenson's email was altered to state August 15. It bears repeating that the Defendants failed to offer any evidence during the hearing that contradicted this fact or explained why the font is different. Thus, the overwhelming weight of the evidence supports the firm conclusion that the relevant dates were intentionally altered.

### 7.
### There Were No Filing Errors Attributable To Mr. Johnson's CM/ECF Filing Account On August 15

The justification Mr. Johnson and Ms. Stevenson provided for the absence of any Notice of Electronic Filing email sent confirming filing of the Defendants' Answer to Plaintiffs' First Amended Complaint on August 15 is that Ms. Stevenson allegedly received an error message after she attempted to file the Answer stating:

> Security violation: You do not have access rights to this program (iqquerymenu.pl). Please contact the Systems Administrator if you feel this is in error. This access attempt has been logged.

> This error message will be referred to as the "iqquerymenu.pl error". Upon receiving the

claimed "error," Ms. Stevenson said she contacted the CM/ECF "help desk", and an unidentified person assured her that the filing was completed and there was nothing else she needed to do. Nonetheless, Ms. Stevenson claimed that she took a screenshot of this error message. That screenshot was produced to Mr. Chen and is included in the top half of Page 11 of Hearing Exhibit B. (Hearing Exhibit B, p. 11; Exhibit 3). Importantly, the error message Ms. Stevenson claimed she received states "[t]his access attempt has been logged." (Hearing Exhibit B, p. 11; Exhibit 3); (Hearing Tr., p. 85, ¶¶8-25, p. 86, ¶¶1-9). However, as Mr. Chen testified, each iqquerymenu.pl error is logged on the System Error Log File. Thus, CM/ECF employees such as Mr. Chen can determine exactly what attorney received an iqquerymenu.pl error message on a specific day by reviewing the attorney's unique User ID number (Hearing Tr., p. 85, ¶¶8-25, p. 86, ¶¶1-25, p. 87, ¶¶1-25, p. 88, ¶¶1-25, p. 89, ¶¶1-12).

Every attorney who practices in the Northern District of Illinois is given a unique User ID number. (Hearing Tr., p. 42, ¶¶14-17, p. 87, ¶¶2-11). Prior to the hearing, Mr. Chen ran a System Error Log file for the dates of August 14, 2018 through August 17, 2018. (Hearing Exhibit B, p. 11; Exhibit 3). It revealed that the following attorneys received an iqquerymenu.pl error message between the dates of August 14 through August 17: (a) Howard F. who is located in Chicago, Illinois; (b) Ryan K. who is located in Glen Ellyn, Illinois; (c) a U.S. Probation Officer and a Northern District of Illinois Staff Attorney; and (d) Norman J. who is located in Chicago, Illinois. (Hearing Exhibit B, p. 11; Exhibit 3); (Hearing Tr., p. 87, ¶¶13-25, p.88, ¶¶1-25, p. 89, ¶¶1-9). Not a single one of these messages is attributable to Mr. Johnson's unique User ID number. (Hearing Exhibit B, p. 11; Exhibit3); (Hearing Tr., p. 87, ¶¶13-25, p. 88, ¶¶1-25, p. 89, ¶¶1-9).

The only conclusion that one can draw is that neither Ms. Stevenson nor Mr. Johnson attempted to file the Defendants' Answer to the Plaintiffs' First Amended Complaint on August 15. The System Error Log File evidences no errors attributable to Mr. Johnson on August 15, which further proves that Ms. Stevenson lied about the facts and circumstances regarding the filing of Defendants' Answer to the Plaintiffs' First Amended Complaint. Mr. Johnson was insistent that the Answer was timely filed – or that it's timely filing was attempted. That insistence persisted despite the overwhelming proof that Ms. Stevenson lied.

If Mr. Johnson was aware of Ms. Stevenson's perfidy on August 15, he is as guilty as she. Actually more so, since he thereafter continued to falsely insist that the Answer was timely filed and that the filing was not properly shown because of a misfunctioning of the court's computer system. He maintained that position throughout the hearing and thereafter. Whatever the state of his belief prior to the hearing, after the hearing he could not reasonably have concluded that Ms. Stevenson was telling the truth or that the Answer had been timely filed. Yet, the best he could say, was that it "appears [he] may have been misled."

Ms. Stevenson's allegation that she received the iqquerymenu.pl error message is further belied by the fact that the iqquerymenu.pl is not even related to filing attempts at all. (Hearing Tr., p. 90, ¶¶16-24). In fact, the only way in which someone can ever receive the iqquerymenu.pl error is when accessing a document through PACER. (Hearing, Tr., p. 93, ¶¶8-22). PACER and CM/ECF are two separate databases. (Hearing Tr., p. 105, ¶¶21-25, p. 106, ¶¶1-17). Attorneys use CM/ECF to file documents in a case. (Hearing Tr., p. 106, ¶¶2-12). But, attorneys cannot file documents in a case through PACER. (Hearing Tr., p. 105, ¶¶21-25, p. 106,¶¶1-5). Rather, attorneys can only view already filed documents in a case through PACER. (Hearing Tr., p. 93, ¶¶8-18). As a result,

neither Ms. Stevenson, Mr. Johnson, nor any attorney, could ever receive the iqquerymenu.pl error when filing a document. (Hearing Tr., p. 90, ¶¶16-24, p. 94, ¶¶5-8).

Finally, Mr. Johnson's feckless argument that the error message appeared because of the clock functions of the computer is a convoluted attempt to avoid admitting the truth of what had occurred. (Hearing Tr., p. 114, ¶¶21-25, p. 115, ¶¶1-25, p. 116, ¶¶1-9). Mr. Chen testified without any contrary evidence that even if the clock on one computer was different than the filing system's clock, an error message would not be generated. (Hearing Tr., p. 115, ¶¶14-24). Further, the clock functions of a computer would not interfere with the CM/ECF system taking a successful filing, if a filing was attempted and successfully filed. (Hearing Tr., p. 114, ¶¶21-25, p. 115, ¶¶1-25, p. 116,¶¶1-9). Therefore, the time on the clock on Mr. Johnson's computer is irrelevant.

## 8.

### Ms. Stevenson Was Not a Credible Witness -- To Say the Least

The testimony of Ms. Stevenson once again demonstrates the wisdom of Judge Posner's common sense observation that witnesses will lie when it is to their advantage. *Schmude v. Tricam Industries, Inc.*, 556 F.3d 624, 628 (7th Cir. 2009); *Nisenbaum v. Milwaukee Cty.*, 333 F.3d 804, 810 (7th Cir. 2003). Even lawyers have been known to fabricate testimony when it assists them or their client. *See, e.g. FTC v. Advocate Health Care Network*, 162 F.Supp.3d 666, 671 (N.D. Ill. 2016)(in-house counsel filed false declarations in support of position advocated by employer); *Tellabs v. Fujitsu*, 283 F.R.D. 374 (N.D.Ill. 2012)(same). *Compare Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)("a treating physician may also 'bend over backwards' to assist a patient in obtaining benefits ...").

In attempting to separate truth from a tale spun for the occasion, a trier of fact must look to

the implausibility of testimony, the shifting and vacillating explanations for conduct, uncertain and inconsistent memories, the inconsistencies between testimony and objective evidence, the internal inconsistencies within testimony, and the extent to which documents or objective evidence contradict the witness' story. *See Anderson,* 470 U.S. at 574-75; *Bradford,* 499 F.3d at 920-21; *Kadia v. Gonzales,* 501 F.3d 817, 820 (7th Cir.2007). Where the testimony is such that no reasonable fact-finder would credit it, it is appropriate to reject it. *See Anderson v. City of Bessemer*, 470 U.S. 564, 575-76 (1985); *United States v. Bradford,* 499 F.3d 910, 920-21 (8th Cir.2007); *Pinpoint, Inc. v. Amazon.Com, Inc.,* 347 F.Supp.2d 579, 583 (N.D.Ill. 2004) (Posner, J.)(sitting by designation). *Cf. NLRB v. Dorothy Shamrock Coal Co.,* 833 F.2d 1263, 1268 (7th Cir. 1987). In the instant case, Ms. Stevenson's "story" was fabricated for the occasion and totally refuted by the facts of the case. It had no more truth than if she had claimed she had been to Mars for a vacation.

Second, Ms. Stevenson's testimony contradicts the prior filings in this case. Originally, in the Defendants' Response, Defendants indicated that they received a "file not found" message. (Response ¶5; Exhibit 1). However, for the first time during the hearing, Ms. Stevenson testified that she simultaneously received an error message from CM/ECF, which stated "file not found" and the iqquerymenu.pl error message from PACER in a separate window. (Hearing Tr., p. 145, ¶¶19-25 p. 146, ¶¶1-3, p. 156, ¶¶13-25, p. 157, ¶¶1-21, p. 222, ¶¶18-23). As Mr. Chen's testimony revealed, it was not possible to receive the iqquerymenu.pl error message in the CM/ECF system. Third, the inaction by Mr. Johnson and Ms. Stevenson further discredits Stevenson's credibility. As I noted during the hearing, "where witnesses don't say anything and you look at the circumstances, and if there was a kind of obligation or a natural instinct that you would say or do something, and you don't, that counts in terms of assessing credibility." (Hearing Tr., p. 221, ¶¶9-25, p. 222,

27

¶¶1-27).[5] In particular, Ms. Stevenson testified that neither she nor Mr. Johnson did anything with respect to the filing even after she spoke to the CM/ECF help desk on August 15. Importantly, Ms. Stevenson admitted that she did not know if the Defendants' Answer had been successfully filed, but knew that she would receive a Notice of Electronic Filing email if the filing was successful. (Hearing Tr., p. 128, ¶¶1-25, p. 129, ¶¶1-7, p. 160, ¶¶20-25, p. 161,¶¶2-24)("And from my conversation with her, what she told me was if I got a confirmation screen, she would assume that it was filed. But I should wait to see if I got an email confirmation to confirm that.").

On August 27 the Plaintiffs filed their Motion for Default Judgment. (Hearing Tr., p. 161, ¶¶22-24, p. 162, ¶¶1-4). Incredibly, Ms. Stevenson testified that she and Mr. Johnson never even spoke again about the claimed unsuccessful "filing" between August 16 and August 27. (Hearing Tr., p. 136, ¶¶5-25, p. 137, ¶¶1-2, p. 147, ¶¶20-25,p. 148, ¶¶1-16, pp. 160-164). The claim of lack of notice is at best implausible and at worst contrived. The claimed inaction is contrary to common sense and human experience, which always have a role to play in litigation. *New Jersey v. T.L.O.*, 469 U.S. 325 (1985). Even more disturbing is Ms. Stevenson's false testimony that when she received the (claimed) error message from the CM/ECF system – the evidence showed she never received such a message – she communicated with J&ILLP's internal IT department. However, it was conceded that J&ILLP does not have an IT Department. (Hearing Tr., p. 217, ¶¶11-25, p. 218,

---

[5] Of course, inferences from silence are often perilous. But in a context where some prompt outcry would be expected, a witness's failure to say anything can have evidentiary significance. What is legally significant is silence in the face of circumstances that warrant a response. *Georgia v. South Carolina,* 497 U.S. 376, 389 (1990). *See also* cases collected in *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 2018 WL 2254790, at *3 (N.D. Ill. 2018).

¶¶1-4).

Despite the overwhelming evidence of Ms. Stevenson's mendacity, the best the Defendants' lawyer will say even now is that Ms. Stevenson's rendition of events "*appears to be inaccurate and/or untrue*" and that "it now *appears* that [Mr. Johnson] was misled." [Dkt. #116 at 4, 5] (Emphasis supplied). Although Mr. Johnson put on no evidence at the hearing, he claims in his posthearing brief that he relied on Ms. Stevenson and had no reason to disbelieve the truth of what she said. Consequently, Mr. Johnson insists he did not "litigate in bad faith." [Dkt. #116 at 6]. But he conceded that he did not even attempt to conduct a meaningful inquiry as to the truthfulness of Ms. Stevenson's contrived and involved story and that he "continued in his belief that [she] had been forthright with what occurred on August 15, 2018." [Dkt. #116 at 3]. Yet, not a particle of remotely admissible evidence supporting that assertion was offered by the Defendants at the hearing. Mr. Johnson's unamplified and unsupported insistence in his brief that he was not part of any fraud and that he believed his paralegal is not enough. [Dkt. #116 at 5]. "Saying so doesn't make it so," *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010), "Nothing is simpler than to make an unsubstantiated allegation," *Parko v. Shell Oil,* 739 F.3d 1083, 1086 (7th Cir. 2014). Thus, unsupported statements in briefs are not evidence and are not to be used to supplement the record. *See, e.g., Woolard v. Woolard,* 547 F.3d 755, 760 (7th Cir.2008).[6]

The unsupported claim in Mr. Johnson's post- hearing brief [Dkt. 116 at 5 ] that he thought his paralegal was telling the truth because of the unsigned, undated, unauthenticated "letter" from

---

[6] *Accord Howell v. Motorola, Inc.,* 633 F.3d 552, 565 (7th Cir. 2011)("despite the plaintiffs' statements in their briefs, there is not a shred of evidence that would permit an inference...."); *Ho v. Donovan,* 569 F.3d 677, 682 (7th Cir.2009); *IFC Credit Corp v. Aliano Brothers General Contractors, Inc.,* 437 F.3d 606, 610-611 (7th Cir. 2006).

the IT vendor [Dkt. ##118-119] is rejected.[7] Moreover, as far as the proof showed, it could have been prepared by anyone at any time. There was no evidence offered that Mr. Johnson relied on it or thought it was even likely accurate, especially given the "letter's" statement that the IT vendor did not know about the workings of the CM ECF system.

Mr. Johnson could not reasonably have thought that the supposed "letter" would be admissible or that it could legitimately serve as the basis for a claim that he credited his paralegal's story and therefore took no action to investigate the matter. It is not that the unsigned, undated, unsworn, unaddressed, undated, unauthenticated "letter" ran afoul of the hearsay rule given the use Mr. Johnson tried to make of it. It did not. Whether a particular out-of-court statement is inadmissible hearsay "will most often hinge on the purpose for which it is offered." *Lovelace v. McKenna*, 894 F.3d 845, 849 (7th Cir. 2018); *United States. v. Hanson*, 994 F.2d 403, 406 (7th Cir. 1993). The supposed letter was not offered to prove the truth of the matters it asserted, but to show why Mr. Johnson thought his paralegal's story regarding the events of August 15 was true. And that, he says, is what accounts for why he may have "in turn misstated the facts to the Court" in regard to what occurred on August 15. [Dkt. #116 at 5]. Thus, it was not hearsay. *United States v. Shaw*, 824 F.3d 624, 630 (7th Cir. 2016)*; United States v. Inglese*, 282 F.3d 528, 538 (7th Cir. 2002). *See* Jeffrey Cole, *The Continuing Riddle of the Federal Hearsay Rule*, Litigation, Spring 1999, at 15-16.

Of course, I am not bound to accept any statements that are not shown to be reliable. *Cf. Mister v. Northeast Illinois Commuter RR Corp.,* 571 F.3d 696, 699 (7th Cir.2009); *United States v. McCluskey*, 954 F. Supp. 2d 1224, 1248 (D.N.M. 2013)("Unreliable evidence is inadmissible").

---

[7] There was not even an attempted authentication of the document. *See* Rule 901, Federal Rules of Evidence. Nor was there any *evidence* that Mr Johnson relied on it.

In this case, there is not even a Declaration from Mr. Johnson or a particle of admissible evidence to support the claim that the undated, unsigned, unaddressed, unauthenticated, unsworn document fortified Johnson's belief in his paralegal's word. Naked statements in briefs don't count, *INS v. Phinpathya*, 464 U.S. 183, 188–89 n.6 (1984); *United States v. Chapman*, 694 F.3d 908, 914 (7th Cir.2012),[8] and I do not accept or believe Mr. Johnson's unsupported protestations of good faith in his post-trial submission. *See also* Plaintiffs' Reply. (Dkt. 117 at 5). His conduct in this case is, at the least, tantamount to bad faith, the inevitable outcome of which was to obstruct the judicial process. *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018).

Mr. Johnson's unsupported claim of good faith is not rejected because it is "self-serving." Most testimony is self-serving or it would not be offered in support of a position. That rubric has been interred as a basis to reject testimony. *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013);*Sanders v. Melvin*, 873 F.3d 957, 960 (7th Cir. 2017). Under the circumstances of this case, I simply don't believe the assertion in Mr. Johnson's brief that he relied on the undated, unsworn, unsigned, unaddressed, unauthenticated statement from a purported IT vendor and that it explains why he did nothing to determine whether his paralegal was telling the truth about the claimed August 15th filing.

---

[8] *Accord*, *Clifford v. Crop Production Services, Inc*., 627 F.3d 268, 273 n. 6 (7th Cir.2010). *Cf. In re Payne*, 431 F.3d 1055, 1060 (7th Cir.2005)(Posner, J.)(unsubstantiated assertion at oral argument given no weight). An argument is waived by failure to properly support the factual basis essential to its disposition. *Morgan v. South Bend Community School Corp*., 797 F.2d 471, 480 (7th Cir.1986). *See, Sapia v. Bd. of Educ. of the City of Chicago*, 2017 WL 2060344, at *1 (N.D. Ill. 2017)(collecting cases)..

.

## B.

## THE FRAUDULENT ACTS OF MR. JOHNSON'S PARALEGAL DESIGNED TO AVOID THE CONSEQUENCE OF A DEFAULT ARE IMPUTED TO MR. JOHNSON AND HIS FIRM AND WARRANT THE IMPOSITION OF SANCTIONS AGAINST THEM

### 1.

The principle cited by the Plaintiffs, that an employer is liable for the acts of his employee committed in the course of the latter's employment is applicable here. [*see* Plaintiffs' Reply Brief in Support*; McCollough v. Johnson, Rodenberg & Lauinger*, 587 F. Supp. 2d 1170, 1177 (D. Mont. 2008); *Florida Bar v. Riggs*, 944 So.2d 167 (Fla. 2006)(lawyer responsible for paralegal's ethical misconduct which is imputed to the firm); *Inverness Med. Switzerland GMBH*, 2005 WL 1491233, at *6 (D. Mass. 2005)*; Owens v. First Family Fin. Servs., Inc.*, 379 F. Supp. 2d 840, 850 (S.D. Miss. 2005)*; Rodriguez v. Montalvo,* 337 F.Supp.2d 212, 217–19 (D.Mass 2004); *Richards v. Jain*, 168 F. Supp. 2d 1195, 1203 (W.D. Wash. 2001). *See also* Arthur J. Lachman, *What You Should Know Can Hurt You: Management and Supervisory Responsibility for the Misconduct of Others Under Model Rules 5.1 and 5.3*, Prof. Law., 2007, at 1, 4 (lawyer responsible for paralegal's unethical conduct despite the claim that the lawyers "never knew" of the unethical conduct by the paralegal).

### 2.

As late as August 27, 2018, Mr. Johnson was representing to the court that the fabricated contents of Ms. Stevenson's email to Ms. Smith were legitimate and showed that there was an attempted filing on August 15. [Dkt. 88]. Mr. Johnson took no steps to learn whether Ms. Stevenson had lied, and  an extended hearing was required at which Ms. Stevenson continued her deception under oath. Even after the hearing, all Mr. Johnson would say is that it "appears" he was "misled."

Thus, the Plaintiffs should be reimbursed for their costs incurred in bringing the fraud to the light of day. The plaintiffs say they have incurred $31,408.60 in attorneys' fees and costs since August 27, 2018. In addition, the Plaintiffs request any additional fees that they were forced to incur in drafting a reply brief. Those fees are awarded as well and the Plaintiffs' counsel should file the appropriate documentation within 7 days of this Opinion in support of the additional fee request. The conduct of the Defendants' lawyer constituted or was tantamount to bad faith. *United States v. Primus Automotive Financial Services*, 115 F.3d 644, 648-49 (9th Cir. 1997).

Mr. Johnson and his firm shall have 7 days to contest the amount sought by the additional fee request. However, as a matter of discretion, that award will not run against the Defendants.

The Plaintiffs should file by Friday, May 31, any additional amount through the filing of the Reply Brief that were necessitated by the actions of the Defendants' law firm. Should the total amount be questioned, written objections must be filed by the Defendants (or Mr. Johnson) by Friday, June 7. Indeed, Mr. Johnson and his Firm have conceded that "sanctions may be warranted [against them] given the circumstances in this matter...." [Dkt. #116 at p.6].

## C.

### A LAWYER'S BEHAVIOR IS IMPUTED TO THE CLIENT

### 1,

It is basic that the conduct of one's lawyer is imputed to the client. *See, e.g., United States v. 8136 S. Dobson St., Chicago, Ill.*, 125 F.3d 1076, 1084 (7th Cir. 1997); *Coleman v. Smith*, 814 F.2d 1142, 1146 (7th Cir. 1987); *Winn v. Allstate Cas. Co.*, 2011 WL 3100345, at *1 (S.D. Ind. 2011); *Thomas v. Exxon Mobil Oil Corp.*, 2007 L 2274710, *2-3 (N.D.Ill. 2007). "Any other notion would

33

be wholly inconsistent of our system of representative litigation...." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-631 (1962). *See also Doe v. FDIC*, 545 Fed. App'x 6, 8 (2ⁿᵈ Cir. 2013); *Tolliver v. Northrup,* 786 F.2d 316 (7th Cir.1986); *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 608–09 (7th Cir. 1986). Judge Easterbrook has perhaps explained it best:

> The district court's approach is well grounded in decisions of the Supreme Court and this circuit. *Link v. Wabash R.R.*, 370 U.S. 626, (1962), holds that litigants are bound by the acts and omissions of their chosen agents, including lawyers, and that legal bungling therefore does not justify reopening a judgment. The Supreme Court added in *Societe Internationale v. Rogers*, 357 U.S. 197 (1958), and *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976), that the intentional misconduct of lawyers likewise is imputed to their clients. And when a client aggrieved by counsel's inept handling of a suit contended that gross negligence should be treated differently from ordinary negligence (*Link*) and intentional misconduct (*National Hockey League*), we rejected the argument and held that labels do not matter. ... When lawyers fail, the remedy is malpractice litigation against the wrongdoer, not more litigation against an innocent adversary in the litigation.

> \* \* \*

> That conclusion cannot be avoided by calling an attorney's failure to file critical documents nonfeasance rather than misfeasance. That would be just another exercise in labeling.... *Northrop Corp.,* 786 F.2d 316 (7th Cir.1986)... explains why it is important to visit the consequences on the bad lawyer rather than the innocent adversary: 'Holding the client responsible for the lawyer's deeds ensures that both clients and lawyers take care to comply. If the lawyer's neglect protected the client from ill consequences, neglect would become all too common. It would be a free good—the neglect would protect the client, and because the client could not suffer the lawyer would not suffer either. The court's power to dismiss a case is designed both to elicit action from the parties in the case at hand and to induce litigants and lawyers in other cases to adhere to timetables. A court cannot lightly excuse a litigant because of the lawyer's neglect without abandoning the pursuit of these objectives.'

*Choice Hotels Int'l, Inc. v. Grover*, 792 F.3d 753, 754-55 (7th Cir. 2015)(parenthesis in original).

Thus, the proper remedy for an innocent client whose lawyer inexcusably misses deadlines and/or otherwise fails in required obligations is a suit against the attorney for malpractice. Keeping a suit alive on the theory that a party should not be penalized for the omissions of his chosen attorney

– which is Mr. Johnson's belated, unsupported theory – would be visiting the sins of the lawyer on the blameless opponent. *Kagan, supra.*[9] The client's "beef is against [its lawyer] not the court's ruling on the case.... 'Holding the client responsible for the lawyers' deeds ensures that both clients and lawyers take care to comply. If the lawyers' neglect protected the client from ill consequences, neglect would become all too common.'" *Bakery Mach. & Fabrication, Inc., v. Traditional Baking, Inc.*, 570 F.3d 845, 848–49 (7th Cir. 2009). "'[T]here is certainly nothing novel [or unjust] about holding clients responsible for the conduct of their attorneys, even conduct they did not know about.'" *Thorpe v. Ancell,* 367 F.App'x 914, 923 (10th Cir. 2010). *See also Fuery*, *supra; Martinez v. City of Chicago*, 499 F.3d 721, 728 (7th Cir. 2007); *Superior Diving Co. Inc. v. Cortigene*, 372 F. App'x 496, 497 (5th Cir. 2010)(lawyer's failure to meet deadlines).

The result may seem harsh or unfair when viewed solely from the clients' perspective. But there are other compelling interests at stake, *Link v. Wabash R. Co.*, 370 U.S. at 630-631; *Bakery Mach. & Fabrication*, 570 F.3d at 849; *Martinez*, 499 F.3d at 728, and doctrines and rules are not to be viewed in isolation. *Gautreaux v. Romney*, 457 F.2d 124, 138 (7th Cir.1972) ("Although the district court's remedy may appear to be harsh and drastic when viewed in isolation, the problem it seeks to alleviate is crucial and monumental.").

A court's inherent power to impose sanctions exists to reach "a full range of litigation abuses," even in situations where other procedural rules exist to sanction the same conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). *See also Fuery*, 900 F.3d at 452. "A court may use its inherent authority to sanction those who show willful disobedience of a court order, act in bad

---

[9] In addition to the cases cited above, *see United States v. DiMucci*, 879 F.2d 1488, 1496 (7th Cir.1989); *Wilson v. Smith & Nephew, Inc.*, 2013 WL 1875949, at *5 (N.D. Tex. 2013).

faith, vexatiously, wantonly, or for oppressive reasons, for fraud on the court, delay, disruption or hampering enforcement of a court's order." *Chambers*, 501 U.S. at 45-46. A witness and certainly a lawyer need not be warned that they cannot lie. *Fuery*, 900 F.3d at 466.The inherent authority to sanction a party includes but is not limited to the authority to award attorneys' fees and the authority to enter judgment against a party, even without a warning. *Id*. at 463. *See also Halas v. Consumer Servs*., 16 F.3d 161, 165 (7th Cir. 1994) ("If default is merited, a court need not first impose lesser sanctions, i.e. a "warning shot" is unnecessary"); *Hal Commodity Cycles Management Co. v. Kirsh*, 825 F.2d 1136, 1139 (7th Cir. 1987). "This power is particularly broad where the bad faith conduct occurs within the presence of the court...." *Fuery*, 900 F.3d at 463.

In *Fuery,* three plaintiffs filed a suit including claims of excessive force. During a trial, one of the plaintiffs' attorneys consistently violated the court's prior ruling. The jury returned a verdict in favor of one of the plaintiffs. Nonetheless, because of the continual misconduct of the Plaintiffs' lawyer, the court exercised its inherent power and entered judgment in favor of the City. 900 F.3d at 453. Here, the actions of the Defendants' lawyer and his employee quite clearly involve "bad faith." Therefore, a default will be entered against the defendants.

## 2.

While the award of fees and costs incurred in connection with the attempted fraud will not be against the Defendants, I am vacating my earlier Order denying the Motion for Default Judgment [Dkt. #90] and defaulting the Defendants. Under the unique circumstances of this case, the award of a default is appropriate. The inherent powers of a court are more than adequate to allow a district court to impose as a sanction a judgment against a party for the misconduct of his lawyer, which, of course, is imputed to the client, as case after case holds.

36

As the Plaintiffs point out, Federal Rule of Civil Procedure 55 authorizes the entry of default judgment against a party that "has failed to plead or otherwise defend." *See* Fed.R.Civ.P. 55(a), (b)(2); *Cannon v. Washington*, 321 F. App'x 501, 502 (7th Cir. 2009).  Importantly, however, the process has two steps which, as the Seventh Circuit explained, are often not followed (but must be):

> The confusion could have been avoided if the parties and the court had more strictly adhered to the principle that "[t]here are two stages in a default proceeding: the establishment of the default, and the actual entry of a default judgment. Once the default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks." *In re Catt*, 368 F.3d 789, 793 (7th Cir.2004). This two-step process is clearly outlined in Rule 55(a) (entry of default) and Rule 55(b) (default judgment) of the Federal Rules of Civil Procedure. The basic effect of an entry of default (step one) is that "[u]pon default, the well-pleaded allegations of a complaint relating to liability are taken as true. *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir.1983). The defaulting party cannot contest the fact of his liability unless the entry of default is vacated under Rule 55(c). See 10 James W.M. Moore et al., Moore's Federal Practice § 55.32[1][a] (3d ed. 2013) ("The effect of an entry of default, if not set aside, is to establish the liability of the defaulting party as a basis for default judgment. After defaulting, a party has no right to dispute the issue of liability."). At the same time, however, the entry of default "does not of itself determine rights." *United States v. Borchardt*, 470 F.2d 257, 260 (7th Cir.1972). That role is reserved for a default judgment.

*VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016).

So, *under the circumstances of this case*, the failure to have timely filed an Answer merits the entry of a default.  However, "[a] judgment by default may not be entered without a hearing on damages unless, . . . the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits."  *Dundee Cement Co. v. Howard Pipe & Concrete Prod., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). That's the next step for plaintiffs. *See JMB Mfg., Inc. v. Child Craft, LLC*, 799 F.3d 780, 791 (7th Cir. 2015)("A default judgment would have fully resolved the counterclaims against Summit, including the amount it owed, and to be final it would have needed to have been certified as a separate and appealable final

judgment under Federal Rule of Civil Procedure 54(b). Here, no amount of damages was specified and no separate Rule 54(b) judgment was entered.").

It should be underscored that this was no ordinary default. In this case, the failure to timely answer or otherwise plead was sought to be concealed by a fraud on the court and the plaintiffs. That misconduct can entitle plaintiffs to sanctions up to and including a default judgment. *Sims v. EGA Prod., Inc.*, 475 F.3d 865, 868 (7th Cir. 2007). As for vacating a default, "carelessness by one of his employees" is no excuse, *see S.E.C. v. Spadaccini*, 256 F. App'x 794, 795 (7th Cir. 2007), and there was far worse than carelessness here. *See Sims v. EGA Prod., Inc.*, 475 F.3d 865, 868 (7th Cir. 2007)("[While] [d]efaults may be set aside for 'good cause'. . . . Rule 55(c) requires 'good cause' for the judicial action, not 'good cause' for the defendant's error; as used in this Rule, the phrase is not a synonym for 'excusable neglect.'). Moreover, it is no defense to say that the law firm's failure to timely answer and the subsequent conduct/misconduct of the defense lawyer should not be visited upon the client. The client has a duty to check and see if their "lawyer was doing something to represent him." *Acosta v. DT & C Glob. Mgmt., LLC*, 874 F.3d 557, 561 (7th Cir. 2017).

## CONCLUSION

Upon consideration of the evidence and for the reasons discussed above, the following relief is awarded to the Plaintiffs: a) sanctions are awarded against Mr. Johnson and J&ILLP in the amount of $31,408.60, plus any additional fees and costs Plaintiffs incurred in connection in connection with the filing of their Reply Brief; b) a default is entered in favor of the Plaintiffs and against the Defendants; and c) a hearing will be held to establish the precise amount of any default judgment that might be entered against the Defendants. The date of that hearing will be June 4, 2019 at 10:00 a.m. in courtroom 1003.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

**DATE:** 5/28/19