IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BOARD OF TRUSTEES of the PIPE FITTERS' RETIREMENT FUND, LOCAL 597, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | No. 13 C 7731 |
| v. | ) ) | Magistrate Judge Jeffrey Cole |
| COMMERCIAL COOLING AND HEATING, INC, an Indiana Corporation, and JEANNIE ANDERSON, an Individual, | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**A.**

In late May of this year, I entered an extensive Opinion that dealt with certain critical aspects of this case regarding the alleged filing of the defendants' Answer to the Complaint. Familiarity with that history will be presumed. *See Bd. of Trustees of Pipe Fitters' Ret. Fund, Local 597 v. Commercial Cooling & Heating, Inc.,* 2019 WL 2269959, at *1 (N.D. Ill. 2019). Thereafter, the plaintiffs asked for entry of a Final Judgment Order, awarding them jointly and severally the amount of $2,583,663.95. This amount included $33,252.36 in legal fees incurred in connection with the sanctions portion of the case and an additional $19,865.09 in attorneys' fees *not* associated with the Motion for Sanctions.[1]

---

[1] This amount includes $33,252.36 in attorneys' fees and costs related to Plaintiffs' Motion for Sanctions incurred between August 27, 2018 and February 20, 2019. The request for an award of this amount is contrary to the Order finding that defendants' counsel was responsible for the $33,252.36 in attorneys' fees and costs. While Mr. Johnson has accepted responsibility for payment of that amount, the Opinion and Order finding responsibility for that amount ran solely to Mr. Johnson and his Firm, and not to his clients. Mr. Johnson has represented that he has no objection to paying that amount immediately.

However, I had concluded that the $33,252.36 would not be awarded against the defendants but was the responsibility of their lawyer, Mr. Johnson, who agreed unhesitatingly to pay those fees and costs. His only question was what was the actual amount he had to pay. Thus, that amount is not and should not be included in the Final Judgment Order applicable to the defendants' obligation to pay the plaintiffs, despite the fact that the plaintiffs have sought to have that amount included in the Final Judgment Order against the defendants.

The plaintiffs have sought an award of $169,374.06 in liquidated damages for the period of May 1, 2014 through December 31, 2017. The defendants' proposed Final Order claims that the liquidated damages only come to $166,682.91 – which is the amount specified in the settlement agreement. And it is the amount specified in paragraph 1 of the plaintiffs' Motion for Entry of Final Judgment. Accordingly, we shall use the amount of $166,682.91 and not the amount of $169374.06. As to the balance of the amount sought by the plaintiffs, the defendants contend that it was not part of the Settlement Agreement and that a new lawsuit would have to be filed by the plaintiffs. Consistent with their conduct throughout the course of this case, no reasoned or supported argument has been made by the defendants. In fact, beyond the simple assertion that the defendants are right, and the plaintiffs wrong, the defendants have offered nothing in support of their partisan conclusions. But, the Seventh Circuit, like other Courts of Appeals, has "repeatedly and consistently held that 'perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.'" *United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017). *Accord Blow v. Bijora*, 855 F.3d 793,805 (7th Cir. 2017); *Silais v. Sessions*, 855 F.3d 736, 746 (7th Cir. 2017); *Quintana v. Adair*, 673 F. App'x 815, 820 (10th Cir. 2016); *Massuda v. Panda Exp., Inc.*, 759 F.3d 779, 783-784 (7th Cir. 2014); *Puffer v. Allstate Ins. Co.,* 675 F.3d 709, 718 (7th Cir.2012). *See also United*

*States v. Manjang*, 634 F. App'x 528, 531 (6th Cir. 2015).

The undeveloped argument, conclusorily advanced by defendants' counsel at the hearing on the Motion for Entry of Final Judgment Order, [Dkt. #135] was also the subject of extensive analysis by the plaintiffs much earlier in the case. [Dkt. #91]. At the time, the defendants and their counsel did exactly what they did at the recent hearing: that is, they did nothing, except advance a conclusion without authority or development or briefing or explication. That is a waiver. *United States v. Alden*, 527 F.3d 653, 664 (7th Cir. 2008);*Garlington v. O'Leary*, 879 F.2d 277, 285, (7th Cir. 1989); *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 779 (6th Cir. 2018); *Elizarri v. Sheriff of Cook Cty.*, 2017 WL 5900277, at *3 (N.D. Ill. 2017).

By contrast, the plaintiffs filed an extensive brief in September 2018, which explored at great length the meaning of the Settlement Agreement and explained paragraph 13 of the Agreement should not be construed as, and was not intended to be, a jurisdictional requirement that the plaintiffs file a separate lawsuit in order to pursue the collection of subsequent audit deficiencies, beyond the amount that the parties had agreed to. *See* the extensive discussion by the plaintiffs in their brief of 9/12/18. [Dkt. #91]. Of course, consistent with their performance in this case, neither the defendants nor their counsel filed any brief or other document in response to the plaintiffs' lengthy analysis regarding the meaning of the Settlement Agreement and why the defendants were contractually obligated to pay the entire amount found to be owing, and why that amount was not limited merely to the approximately $166,000 plus which the parties did not dispute was due and owing. [*See* Dkt. #91]. In short, the plaintiffs demonstrated why there was no jurisdictional violation by requiring the defendants to pay the amount that the plaintiffs claimed was owing and not merely the approximately $166,000 which the defendants agreed they owed.

**B.**

The practice of the parties settling a civil case with the court retaining jurisdiction to enforce the terms of the settlement is not novel, and parties often will ask a court to dismiss the case without prejudice and retain jurisdiction for a definite time to enforce the terms of the Settlement Agreement. The parties will often find that preferable to being required to file a new action in the state court to enforce what is, in essence, a contract. *Shapo v. Engle*, 463 F.3d 641, 643 (7th Cir. 2006). One can see why a plaintiff would not want to settle a suit if that settlement was little more than a ticket to starting things over again in state court (assuming the parties are not diverse) against the same party whose conduct precipitated the suit in the first place. In this regard, *Shapo* advised district court judges and parties that, to avoid problems, "the district court should state that judgment is being entered in order to allow the parties to enforce it and that the 'without prejudice' language shall not allow them to reopen issues resolved by the judgment." *Shapo v. Engel*, 463 F.3d 641, 646 (7th Cir. 2006). *See also White v. Adams*, 2009 WL 773877, at *1 (7th Cir. 2009).

Under the terms of the Settlement Agreement in this case, the defendants agreed that they owed plaintiffs "$166,682.91 in unpaid contributions, liquidated damages, interest, audit fees, Referral Hall fees and attorney's fees" and would pay that off in 23 monthly installments at 6% interest. [Dkt. # 91-1, Pars. 1, 2]. The Collective Bargaining Agreement between the parties would then terminate. But the defendants *also* agreed that plaintiffs could conduct future payroll compliance audits for the period of May 1, 2014 until the termination of the Collective Bargaining Agreement. [Dkt. #91-1, ¶ 8]. Any additional obligations that might turn up as a result of those audits – additional liquidated damages, interest, audit fees, attorney's fees – would, they agreed, be due from the defendant within 10 days of occurrence. [Dkt. #91-1, ¶. 12]. As it happens, these

4

audits under the Settlement Agreement turned up additional obligations in the amount of just over $2.5 million. Plaintiffs say, quite rightly, that the defendants are also obligated for that amount under the terms of the Settlement Agreement. Defendants don't agree. But, as we have said, defendants offer only their partisan and unsupported conclusion."[U]nfortunately... saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010

> Paragraph 13 of the Settlement Agreement provided:
>
> The Contribution Reports relied on for this Agreement have not been verified by a payroll compliance audit. If a new payroll compliance audit should be conducted and a reporting deficiency or discrepancy is discovered for any contribution period, the parties agree that said discrepancy and/or deficiency shall be a separate and distinct claim from the claims settled in this agreement.

[Dkt. #91-1, 13]. At the hearing on plaintiffs' motion for default judgment on August 29, 2018, defendants raised the specter of this provision, but offered, as we have noted, no support or reasoned explanation; there was only the defendants' partisan insistence that they were right and that the amounts due under the payroll audits were, by definition under the terms of paragraph 13 "separate and distinct claim[s]" that were not part of the Settlement Agreement and thus would have to be hashed out in another litigation. But that was the first time defendants mentioned anything like this. They certainly didn't mention it in their Answer [Dkt. #87], which, as it turns out, was part of the fraud on the court and has been stricken in any event. [Dkt. # 121]. *See Bd. of Trustees of Pipe Fitters' Ret. Fund, Local 597 v. Commercial Cooling & Heating, Inc.,* 2019 WL 2269959, at *1 (N.D. Ill. 2019).

Moreover, at the close of the August 29th hearing, defendants asked for and were given until September 26th to develop this argument in response to plaintiffs' interpretation that the obligations revealed by the audits were due under the terms of the Settlement Agreement. September 26th came

and went with nothing from defendants. [Dkt. #92]. At that time, it was becoming clear that the Answer defendants had filed was filed fraudulently and defendants and counsel were ordered to appear on October 4th. [Dkt. #93]. They didn't. [Dkt. #95]. Defense counsel and defendant were ordered to appear again, on October 9th. [Dkt. # 95]. This time counsel appeared, but defendants did not. Counsel said this was because he had only managed to read the beginning of the previous Order and didn't get to the part that ordered his client to appear, even though it was in the 12th line. [Dkt. # 96]. Thus, to say the very least, defendants and their lawyer never bothered to brief or develop their argument and it is deemed waived. *Matter of Lisse*, 921 F.3d 629, 640 (7th Cir. 2019); *M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency*, 845 F.3d 313, 321 (7th Cir. 2017); *Ingle v. Pace*, 744 F. App'x 883, 884 (5th Cir. 2018).

Reading the Settlement Agreement as a whole and giving effect to each clause, *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 998 (7th Cir. 2018); *Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 267 (7th Cir. 2016), it is clear as the plaintiffs previously demonstrated [Dkt. #91] what paragraph 13 was meant to assure is that, once the defendant paid the $166,682.91 that was specifically determined and provided for in the Settlement Agreement, defendants wouldn't simply balk at its continuing obligations to make full contributions during the period covered by the settlement agreement. In other words, *if* additional audits – which defendant was obligated to allow under the terms of the Settlement Agreement – showed that defendant was further in arrears or continuing to dodge its obligations, claims regarding those deficiencies were not "covered" by the $166,682.91. The defendants were not, as it were, buying a get-out-of-union-jail free card with their $166,682.91 payment. That would make no sense and contracts – and that is what a Settlement Agreement is – are to be interpreted in a common sense way. *United States v. Barnett*, 415 F.3d 690

6

(7th Cir. 2005) (Posner, J.). "'All interpretation is contextual, and the body of knowledge that goes by the name of 'common sense' is part of the context of interpreting most documents, certainly most business documents.'" *McElroy v. B.F. Goodrich* Co., 73 F.3d 722, 727-28 (7th Cir. 1996). *See also Dispatch Automation, Inc. v. Richards*, 280 F.3d 1116, 1120 (7th Cir. 2002); *Fla. E. Coast Ry. Co. v. CSX Transp., Inc.*, 42 F.3d 1125, 1131 (7th Cir. 1994). The defendants' unsupported, conclusory interpretation of the Settlement Agreement requires a construction of the Agreement that is neither rational, probable, nor consonant with common sense.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 7/1/19